**MOAPA BAND OF PAIUTE INDIANS,**
a chartered Indian tribe,
**Plaintiff-Appellant,**

v.

**UNITED STATES DEPARTMENT OF INTERIOR, an agency of the government of the United States, Defendant-Appellee.**

No. 84–1593.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Oct. 5, 1984.

Decided Nov. 16, 1984.

Earl Monsey, Rogers, Monsey, Woodbury, Phillips, Perry & Berggreen, Las Vegas, Nev., for plaintiff-appellant.

Maria A. Iizuka, U.S. Dept. of Justice, Washington, D.C., for defendant-appellee.

Before GOODWIN, POOLE and BOO-CHEVER, Circuit Judges.

BOOCHEVER, Circuit Judge:

The Secretary of Interior rescinded a tribal ordinance of the Moapa Band of Paiute Indians (Moapa) which would have permitted houses of prostitution on the Moapa Reservation in Clark County, Nevada. The district court upheld the Secretary's action and Moapa appealed. We conclude that the Secretary did not abuse his discretion in rescinding the ordinance.

### FACTS

Nevada law permits counties having a population of less than 250,000 persons to license the operation of houses of prostitution. Nev.Rev.Stat. § 244.345(8).[1] Clark County, however, has a population over 250,000, so brothels are not permitted.

The Moapa Reservation lies in Clark County. Under powers granted to it by the tribal constitution and bylaws, the Moapa Business Council enacted an ordinance permitting the licensing and operation of houses of prostitution on the Reservation. The tribal constitution requires the Business Council to submit licensing ordinances to the Department of the Interior for approval, which the Department can deny for "any cause." Moapa Constitution, art. V, § 4. The Department's Superintendent of the Western Nevada Agency initially approved the ordinance. The Phoenix Area Director of the Bureau of Indian Affairs, however, reversed the approval and rescinded the ordinance. Moapa appealed to the Secretary of the Interior who affirmed the Area Director's revocation.

The Area Director offered two reasons for rescinding the ordinance: (1) non-Indian patrons would be subject to arrest under Nevada laws relating to prostitution despite the Band's licensing ordinance, and (2) Indians and non-Indians both would be subject to arrest under the Assimilative Crimes Act, 18 U.S.C. § 13 (1976), which makes punishable as a federal crime any act committed on federal land which would be a state crime if committed in the state surrounding that land. The Director also observed that although the federal government encourages the economic development of Indian reservations, the commerce generated by prostitution was "not the kind of economic development envisioned by federal policy" and the likelihood of substantial revenues was slim.

On appeal, the Assistant Secretary for Indian Affairs, acting for the Secretary of the Interior, agreed with the Area Director's reasons, and added his concern that brothels would actually retard the Band's overall economic development. Furthermore, he articulated two additional public policy reasons for rescinding the ordinance: (1) licensing and operation of brothels on the Moapa Reservation would bring about a political reaction adverse to Moapa and other Indian tribes, and (2) prostitution is an activity frowned upon by federal policy.

Moapa sought review of the Secretary's action. After a hearing, the magistrate to whom the case was referred found that the Area Director's decision, based on the original reasons he gave, was not arbitrary or capricious. The magistrate did not address the Secretary's additional public policy reasons. The district court adopted the magistrate's findings and conclusions, and granted judgment for the Secretary. Moapa appeals, contending that revocation of the ordinance was arbitrary and capricious.[2]

---

1. Nev.Rev.Stat. § 244.345(8) provides:

In a county having a population of 250,000 or more, the license board shall not grant any license to a petitioner for the purpose of operating a house of ill fame or repute or any other business employing any person for the purpose of prostitution.

2. Moapa makes two arguments against application of the Assimilative Crimes Act which we do not reach on this appeal.

1) Nev.Rev.Stat. § 244.345 regulates brothels in counties whose populations are less than 250,000 but prohibits them in others. The statute itself does not apply to brothels on Indian reservations, but the Assimilative Crimes Act, 18

## Standard of Review

Because we are in the same position as the district court in examining the basis for the Secretary's ruling, we review its decision de novo. *Western Pioneer, Inc. v. United States*, 709 F.2d 1331, 1335 (9th Cir.1983); *Committee for an Independent P–I v. Hearst Corp.*, 704 F.2d 467, 472 (9th Cir.1983). Moreover, we may uphold the Secretary's ruling if any reason given for it is valid, *see DiMarco v. Greene*, 385 F.2d 556, 563 (6th Cir.1967) (agency decision upheld though not all reasons verifiable), even though that reason was not relied on by the district court, *Ybarra v. Reno Thunderbird Mobile Home Village*, 723 F.2d 675, 681 (9th Cir.1984).

The government contends that the Secretary has unreviewable discretion under the terms of the Moapa Constitution to rescind tribal ordinances for public policy reasons. Article V, section 4 of the Moapa Constitution empowers the Secretary to "rescind [an] ordinance or resolution for any cause." The government interprets this provision as committing to the Secretary's sole discretion the decision to rescind tribal ordinances submitted to him for approval.

■ Section 701(a)(2) of the Administrative Procedures Act, 5 U.S.C. § 701(a)(2) (1976), exempts from judicial review agency actions that are committed to agency discretion by law. The Supreme Court, however, has cautioned that this exception is very narrow, and is applicable only where statutes are drawn so broadly "that there is no law to apply." *Citizens to*

*Preserve Overton Park v. Volpe*, 401 U.S. 402, 410, 91 S.Ct. 814, 820, 28 L.Ed.2d 136 (1971). Preclusion of judicial review is not lightly inferred, and usually will not be found absent a clear command of the statute. *Barlow v. Collins*, 397 U.S. 159, 166–67, 90 S.Ct. 832, 837–38, 25 L.Ed.2d 192 (1970).

Applying these principles, courts have been reluctant to limit judicial review even where statutory language appeared to give considerable discretion to administrative decisionmakers. *Compare, e.g., Overton Park*, 401 U.S. at 411, 91 S.Ct. at 421 (allowing review of whether there was any "feasible and prudent alternative" to a highway route) *and Barlow*, 397 U.S. at 165–67, 90 S.Ct. at 836–38 (statute allowing administrator to "prescribe such regulations as he may deem proper" did not preclude review) *with Rank v. Nimmo*, 677 F.2d 692, 699–700 (9th Cir.), *cert. denied*, 459 U.S. 907, 103 S.Ct. 210, 74 L.Ed.2d 168 (1982) (statutory language "the Administrator may, at the Administrator's option" held to vest unreviewable discretion in the Administrator).

■ Consistent with the narrow sweep of section 701, we interpret the tribal constitution to require the Secretary to approve tribal ordinances unless he finds "cause" to rescind them. Under this interpretation, we review the Secretary's public policy findings of "cause" under the same "arbitrary and capricious" standard that applies to the Secretary's other actions. *See* 5 U.S.C. § 706(2)(a) (1976). In addition,

---

U.S.C. § 13 (1976) (ACA), prohibits on a reservation acts prohibited by the jurisdiction surrounding it. *See, e.g., United States v. Marcyes*, 557 F.2d 1361 (9th Cir.1977). The Act does not, however, penalize conduct that is merely regulated by the surrounding jurisdiction. *Compare Barona Group of the Capitan Grande Band of Mission Indians v. Duffy*, 694 F.2d 1185 (9th Cir.1982), *cert. denied*, 461 U.S. 929, 103 S.Ct. 2091, 77 L.Ed.2d 301 (1983) (state law regulates bingo, so bingo not forbidden to Indians by ACA) *and Seminole Tribe v. Butterworth*, 658 F.2d 310 (5th Cir.1981), *cert. denied*, 455 U.S. 1020, 102 S.Ct. 1717, 72 L.Ed.2d 138 (1982) (same) *with Marcyes*, 557 F.2d at 1364 (although state law allows limited use of fireworks it is essentially prohibitory and so applies to Indian

reservation via ACA) *and United States v. Farris*, 624 F.2d 890 (9th Cir.1980), *cert. denied*, 449 U.S. 1111, 101 S.Ct. 920, 66 L.Ed.2d 839 (1981) (state law essentially prohibits gambling so it applies to reservation via Organized Crime Control Act of 1970, 18 U.S.C. § 1955 (1976)).

Moapa contends that Nevada's prostitution statute is "regulatory" and therefore should not apply to it via the ACA. Because we uphold the Secretary on another ground, we do not pass on this question.

2) Moapa goes on to argue that even if the Nevada statute is "prohibitory," it is invalid because its discrimination between counties with more than 250,000 people and those with fewer violates equal protection. This issue too, we need not decide.

this reading of the tribal constitution would reserve to the tribal legislative body a greater measure of autonomy than the government's interpretation, thereby encouraging Indian self-determination. *Cf. Santa Clara Pueblo v. Martinez*, 436 U.S. 49, 62–64, 98 S.Ct. 1670, 1679–1680, 56 L.Ed.2d 106 (1978) (Indian Civil Rights Act reaffirms congressional support for Indian self-determination).

### The Secretary's Public Policy Reason

■ The Secretary offered public policy reasons for rescinding the ordinance which the magistrate did not mention in his Findings and Recommendation, but which are properly before the panel as part of the Department's final decision.

The Secretary contends that federal policy discourages prostitution. In support of this contention he refers to such federal statutes as the Mann Act, 18 U.S.C. §§ 2421–2424 (1976 & Supp. V 1981), which prohibits interstate transportation of women for purposes of prostitution, 18 U.S.C. § 1952 (1976), which prohibits interstate and foreign travel in furtherance of racketeering enterprises including prostitution offenses, and 18 U.S.C. § 1384 (1976), which prohibits prostitution near military establishments. Moapa responds that the federal statutes involving interstate travel may not reflect a federal policy against prostitution per se. Instead, they may be intended to aid the enforcement of state laws in states where prostitution is illegal. If so, the first two statutes would not reflect a federal policy on the issue in Nevada, where prostitution is legal. Similarly, the statute prohibiting prostitution near military bases may reflect concerns for military discipline and hygiene rather than a federal policy to eradicate prostitution.

More telling is a provision of the Immigration and Nationality Act. Title 8 U.S.C. § 1251(a)(12) (1976) provides that an alien in the United States who "is or at any time after entry has been the manager, or is or at any time after entry has been connected with the management, of a house of prostitution or any other immoral place" shall, upon the order of the Attorney General, be deported. The statute is a clear expression of public policy and has been held applicable to the manager of a house of prostitution legally operated under the laws of Nevada. *In re Sylvia Gino Binder*, (Board of Immigration Appeals file # 14 096 426), *aff'd mem.*, 667 F.2d 1030 (9th Cir.1981), *cert. denied*, 457 U.S. 1132, 102 S.Ct. 2957, 73 L.Ed.2d 1348 (1982).

The Supreme Court has at least twice upheld the immigration statute's condemnation of prostitution. *Bugajewitz v. Adams*, 228 U.S. 585, 591, 33 S.Ct. 607, 608, 57 L.Ed. 978 (1913) (deportation of prostitute); *Zakonaite v. Wolf*, 226 U.S. 272, 275, 33 S.Ct. 31, 32, 57 L.Ed. 218 (1912) (same). In *Bugajewitz*, Mr. Justice Holmes forcefully expressed this policy by stating: "Congress has power to order deportation of aliens whose presence in the country it deems hurtful.... [I]t is simply a refusal by the government to harbor persons it does not want." 228 U.S. at 591.

While attitudes towards prostitution may have changed somewhat since 1912, there is no indication that Congress has altered its position so as to condone the operation of bordellos. Moapa argues, however, that there is a conflicting federal policy favoring Indian self-determination. *See, e.g., Santa Clara Pueblo v. Martinez*, 436 U.S. 49, 62–64, 98 S.Ct. 1670, 1679–1680, 56 L.Ed.2d 106 (1978); Indian Civil Rights Act, 25 U.S.C. §§ 1301–1341 (1976). Moapa contends that even if federal policy disfavors prostitution, the activity is legal in Nevada and apparently is a profitable economic enterprise for non-Indians. The Secretary's decision denies Moapa an economic opportunity which the Moapa Business Council has determined will benefit the tribe, and which is available to non-Indians nearby albeit not in Clark County.

Our standard of review is determinative of this issue. We cannot say that the Secretary's decision, after weighing the competing federal policies, is arbitrary or capricious. We therefore must affirm the recission on the ground that the operation

of houses of prostitution is contrary to federal public policy.[3]

AFFIRMED.

3. Although this holding disposes of the appeal we feel constrained to comment on one additional ground relied on by the Secretary. The Secretary took note that brothels, although legal in Nevada, are illegal and offensive to public morals elsewhere. He felt that a brothel on the reservation would attract media attention and tourists, leading to a "political reaction detrimental to the sovereignty, not only of the Moapa Band, but of all Indian tribes." We are thus confronted with whether the potentially adverse reaction of non-Indians justifies the Secretary's revocation of the ordinance.

Federal courts long have recognized that the federal government maintains a fiduciary duty toward Indian tribes to protect them from potentially hostile non-Indian populations. *See, e.g., United States v. Kagama,* 118 U.S. 375, 383–84, 6 S.Ct. 1109, 1113–14, 30 L.Ed. 228 (1886) ("Indian tribes are wards of the nation .... Because of local ill feeling ... there arises the duty of protection [that] has always been recognized by the Executive and by Congress."); *Santa Rosa Band of Indians v. Kings County,* 532 F.2d 655, 664 (9th Cir.1975), *cert. denied,* 429 U.S. 1038, 97 S.Ct. 731, 50 L.Ed. 748 (1977) ("subjecting the reservation to local jurisdiction would dilute if not altogether eliminate Indian political control ... of reservation resources, subjecting Indian economic development to the veto power of potentially hostile local non-Indian majorities.").

Whether it was irrational for the Secretary to conclude that Moapa's participation in an otherwise legal economic enterprise would generate hostility is not a dispositive issue and we need not decide it here. If the issue were dispositive we would be hard pressed to find that the Secretary's "protecting" the Moapa by forbidding to them an otherwise lawful activity was not arbitrary and capricious.